IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TRACY DONTE BURLESON, § § § **Plaintiff,** § § v. § § LONNIE TOWNSENDIV, WARDEN; § AND JASON N GOULD, CAPT; § § **Defendants.** § | CIVIL ACTION NO.  6:21-CV-00501-JCB |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Tracy Donte Burleson, an inmate confined in the Texas prison system, proceeding *pro se*, brings this habeas action pursuant to 28 U.S.C. § 2254 challenging the legality of prison disciplinary action taken against him.  The petition was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Upon review, for the reasons stated herein, the court recommends that the petition be denied, and the case be dismissed with prejudice. The court further recommends that Petitioner be denied a certificate of appealability *sua sponte*.

**I. Background**

Petitioner was convicted of the disciplinary offense possession of contraband on May 21, 2021, receiving 30 days of commissary restrictions, 30 days of cell restrictions, and the loss of 30 days of good time credits. (Doc. No. 18-2, at 3.) He filed a Step One grievance challenging his disciplinary conviction on May 22, 2021. (Doc. No. 18-1, at 3–4.) His Step One grievance was denied on July 19, 2021. *Id.* at 4. Petitioner contends that he appealed this denial by filing a Step

1

Two grievance on July 26, 2021, but he never received a decision. (Doc. No. 3, at 6.) Petitioner filed this federal habeas petition on December 22, 2021. (Doc. No. 3.)

Petitioner raises six grounds for relief in his federal petition:

(1) The letter he allegedly possessed is protected by the First Amendment,

(2) His due process rights were violated when he was denied access to the original letter,

(3) There is insufficient evidence of his guilt,

(4) His punishment is cruel and unusual in violation of the Eighth Amendment,

(5) His due process rights were violated because there was not a proper investigation, and

(6) His due process rights were violated because he did not receive an impartial disciplinary hearing officer.

*Id.* at 6–7. Petitioner seeks to have his previous custody level and status reinstated and the case dismissed off his record to remain eligible for parole. *Id.* at 7.

**II. Respondent's Answer**

After being ordered to do so, Respondent filed an answer addressing the petition. (Doc. Nos. 12; 17.) Respondent maintains that Petitioner failed to exhaust his administrative remedies and his claims are procedurally barred because he never filed a Step Two appeal, and the time for Petitioner to exhaust administrative remedies has expired. (Doc. No. 17, at 6–7.) Respondent also asserts that if Petitioner is challenging the conditions of confinement, he fails to allege an actionable constitutional deprivation. *Id.* at 9. Addressing the merits of Petitioner's claims, Respondent contends that: (1) Petitioner's First Amendment rights were not violated as he contends in ground one, (2) he was not denied due process as it pertains to grounds two, five, and

six, (3) ground three is meritless because there was substantial evidence of his guilt, and (5) his punishment was not cruel and unusual under ground four. *Id.* at 12–13, 15, 18–19. Petitioner did not file a reply.

### III. State Records

Respondent has also furnished copies of the disciplinary records in the case. In his Step One grievance, Petitioner complained that there was insufficient evidence of his guilt because he was never given the original letter. (Doc. No. 18-1, at 3.) He contended that he did not write a gang-related letter because in 42 days he was going to be placed general population and would be parole eligible. *Id.* He further asserted that Texas Department of Criminal Justice ("TDCJ") employees falsified records and failed to conduct a proper investigation. *Id.* Petitioner requested lesser punishment or that his disciplinary case be overturned. *Id.* at 4. The response to his grievance, signed by Warden Collum, stated that the disciplinary case had been reviewed, there was sufficient evidence to support the finding of guilt, no procedural errors were noted, the punishment imposed was within the guidelines, the case was valid, and possession of contraband would not be tolerated, so no action was warranted. *Id.* There is no Step Two appeal in the record.

The court has also received and reviewed the audio recording of the hearing. At the hearing, the hearing officer introduced himself and had Petitioner introduce himself. Counsel substitute stated that she was ready, and the charge was read. Petitioner acknowledged that he understood the charges against him, he received a copy of the charge on May 3, 2021, he was advised of his rights at the time of service, and he had an opportunity to discuss the charges with his counsel substitute.

Petitioner entered a plea of not guilty and was given the chance to make a statement. He testified that he had no knowledge of the letter other than what was included in the charge.

The hearing officer asked counsel substitute if she had any documentary evidence or witnesses. Petitioner had no witnesses or evidence but asked them to consider that he had no recent disciplinary cases. The hearing officer informed Petitioner that a copy of the letter indicating correspondence between gang members would be considered as evidence. The hearing was then recessed until the charging officer could be present.

After resuming the hearing, the hearing officer called the charging officer who intercepted the letter as a witness. She testified that she was reviewing mail when she intercepted Petitioner's letter containing STG contraband. She said that she knew Petitioner wrote the letter because his name was on the envelope but could not remember if it was an outgoing letter in response to counsel substitute's questions. In response to a question posed by Petitioner, the charging officer testified she knew it was contraband because the letter identified that he was a part of a gang. She also confirmed that the letter contained in the file was a copy.

The hearing officer asked for mitigating evidence, and counsel substitute stated that Petitioner was making a generalized statement in the letter, if the letter was actually his, which remained a question. Counsel substitute again asked for leniency because the substance of the letter did not lead to the hampering of unit operations, and Petitioner had no disciplinary cases for almost a year. Counsel substitute also asked Petitioner if he had anything else to say. Petitioner said that he did not know what was going on in this case, but he was not going to cause problems and has not caused problems. Petitioner was found guilty and punishment assessed.

### IV. Discussion

#### A. Exhaustion

Respondent argues that Petitioner's claims are procedurally barred because he did not exhaust administrative remedies. (Doc. No. 17, at 6.) Respondent contends that only two of

Petitioner's six federal habeas claims were included in his Step One grievance (grounds three and five), and he never filed a Step Two appeal. *Id.* at 7. Petitioner contends that he filed a Step Two appeal but never received a response. (Doc. No. 3, at 6.)

Prisoners seeking habeas corpus relief are required to exhaust their available state remedies. 28 U.S.C. § 2254(b). When the conviction challenged is a prison disciplinary conviction, this requires that the prison administrative grievance procedures be exhausted. *See Baxter v. Estelle*, 614 F.2d 1030, 1031–32 (5th Cir. 1980); *Lerma v. Estelle*, 585 F.2d 1297, 1298–99 (5th Cir. 1978). The requirement of exhaustion means "proper exhaustion," complying with all administrative deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

The Fifth Circuit has stated that in order for an issue to be properly exhausted, it must be presented in a Step One grievance and then appealed to Step Two. *Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008). The record reflects that TDCJ has no Step 2 appeal records on file regarding the challenged disciplinary case. As Respondent contends, the time for filing a Step Two appeal has expired. (Doc. No. 17, at 6–7.) TDCJ, Offender Orientation Handbook (Feb. 2017), at 85–86, https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (noting that an offender has fifteen days to file a Step Two appeal after the Step One decision is returned). As a result, these claims are unexhausted and thus procedurally defaulted. *Moffatt v. Director, TDCJ-CID*, 390 F.Supp.2d 560, 563 (E.D. Tex. 2005); *see Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). In the interest of justice, however, the court will consider these claims on the merits. *See* 28 U.S.C. § 2254(b)(2) (identifying that the district court may deny habeas claims even if the claims are unexhausted).

**B. Due Process (Grounds Two, Five, and Six)**

As a preliminary matter, a state prisoner seeking federal habeas review pursuant to Section 2254 must assert a violation of a federal constitutional right to be entitled to such relief. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). The Supreme Court has held that the due process clause is applicable to disciplinary proceedings where a prisoner is threatened with the loss of good time or imposition of solitary confinement. *Wolff v. McDonnell*, 418 U.S. 539, 539–40 (1974). In *Wolff*, the Court held that inmates must be afforded written notice of the alleged violation at least twenty-four hours before a disciplinary hearing, a written statement of the fact finders as to the evidence relied on and reasons, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals. *Id.* at 563–66.

The Supreme Court subsequently placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Court concluded that the federal judiciary had gone too far in extending due process rights as first articulated in *Wolff*. The Court retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement. *Id.* at 485–86. The Court referred to its discussion in *Wolff* regarding solitary confinement as "dicta." *Id.* at 486. The Supreme Court then went on to hold that absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action. *Id.* at 486–87.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger the protection of the Constitution. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). The loss of the opportunity to earn good time will not trigger the protection of the

6

Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000). The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will not support relief to the extent that it adversely affects parole eligibility. *Sandin*, 515 U.S. at 487. However, the loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison*, 104 F.3d at 769.

In the present case, to the extent the Petitioner's punishment included the loss of commissary privileges and cell restrictions, his punishment was not significant enough to trigger the protection of the Constitution. On the other hand, he lost good time and is eligible for release on mandatory supervision. The loss of good time involved a protected liberty interest. He is therefore entitled to have his disciplinary case reviewed in light of the rights specified in *Wolff*.

In grounds two and five, Petitioner asserts that TDCJ violated his right to due process by denying him access to the original letter and failing to conduct a proper investigation. (Doc. No. 3, at 6–7.) In ground six, Petitioner claims that his due process rights were violated because he was denied the right to an unbiased hearing officer. *Id.* at 7. Respondent contends that all due process requirements were met. (Doc. No. 17 at 12.)

Here, Petitioner was provided written notice of the disciplinary hearing at least twenty-four hours before the proceeding. Petitioner was notified of the disciplinary hearing on May 3, 2021, and the hearing was held on May 21, 2021. (Doc. No. 18-2, at 3, 7.) Petitioner also received a written statement from the fact finder indicating the evidence relied upon and the reason for their action. Petitioner received the Disciplinary Report and Hearing Record, which cited the evidence relied upon to determine his guilt and the reasons for TDCJ's actions. *Id.* at 3–4. Petitioner also

had the opportunity to call witnesses and present documentary evidence but chose not to. *Id.* at 4. Petitioner did, however, give a statement during the hearing, and his counsel substitute cross-examined the charging officer. *Id.*

Although Petitioner challenges TDCJ's use of a copy of the letter, the investigative process, and the disciplinary hearing officer's alleged bias, Petitioner has not presented any evidence or alleged any facts indicating that he was denied due process, nor does the court's review of the record reveal any due process violations. Due process guarantees minimum procedures to ensure that an inmate's rights are not arbitrarily abrogated. *See Wolff*, 418 U.S. at 557. The court finds that those minimum procedures were met here.

### C. First Amendment (Ground One)

Petitioner maintains his innocence, but claims that letter is protected speech, regardless of who wrote it. (Doc. No. 3, at 6.) Respondent contends that the letter is not protected speech because TDCJ has legitimate penological interest in limiting outgoing mail concerning gang relations in the prison. (Doc. No. 17, at 15.)

Under Rule 16.0(c) of the TDCJ Disciplinary Rules and Procedures, contraband is "[a]ny item which, in the judgment of TDCJ staff, unreasonably hinders the safe and effective operation of the unit." TDCJ, Disciplinary Rules and Procedures for Offenders (Aug. 2019), https://www.tdcj.texas.gov/documents/cid/Disciplinary_Rules_and_Procedures_for_Offenders_English.pdf.

Prisoners are entitled to certain First Amendment rights while incarcerated. *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009). Lawful incarceration, however, "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979)

(quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Security, order, and rehabilitation are legitimate penological objectives. *Procunier v. Martinez*, 416 U.S. 396, 413–14 (1974).

The court considers four factors in determining whether a prison regulation that restricts constitutional rights is reasonable: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate government interest put forward to justify it"; (2) "whether there are alternative means of exercising the right"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates"; and (4) whether "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987) (citations omitted). The first factor is the most important. *Beard v. Banks*, 548 U.S. 521, 532–33. (2006). Accordingly, the Fifth Circuit has held that when a prison regulation restricts a prisoner's mail rights, "the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest." *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993).

Respondent contends that TDCJ has a legitimate penological interest in order and security here, because a letter mentioning gang operations inside TDCJ is akin to plan for potential disruption of the prison security system, which has been recognized by the Fifth Circuit as a legitimate basis for censorship in prison mail. (Doc. No. 17, at 17.) *See McNamara v. Moody*, 606 F.2d 621, 624 (5th Cir. 1979) ("Censorship for violation of prison disciplinary rules is properly limited to communications that relate to more concrete violations such as 'escape plans, plans for disruption of the prison system or work routine, or plans for the importation of contraband." (quoting *Martinez*, 416 U.S. at 413)).

In his outgoing letter, Petitioner stated that he speaks for an identified gang in close custody, therefore if anything happens it must go through him. (Doc. No. 18-2, at 10.) He also identified that another inmate was supposed to "put in the order for the whip" but was transferred to administrative segregation. *Id.* He further asserted that "word [h]as been put out that if any [gang-member] is to see him, well you know from there what that mean[s]." *Id.*

Petitioner's letter identified gang operations within the prison and included threats concerning another inmate. Petitioner's letter objectively threatened the order and security of the prison, and TDCJ's disciplinary action served to correct and prevent Petitioner's actions. The court therefore finds that TDCJ's disciplinary action here was reasonably related to a legitimate penological interest in order and security. Rule 16.0, as applied to Petitioner's outgoing letter, was not an impermissible infringement of his First Amendment rights.

### D. Sufficient Evidence (Ground Three)

In ground three, Petitioner contends that there is insufficient evidence of his guilt because there was no handwriting analysis conducted to confirm the letter came from him, and even the charging officer admitted it could have been authored by someone else. (Doc. No. 3, at 6.) Respondent contends that the evidence presented at the hearing was sufficient under the "some evidence" standard. (Doc. No. 17, at 13–14.)

Due process requires that there be "*some* evidence" to support the findings made in a disciplinary proceeding. *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001). Therefore, so long as there is "any evidence at all" to support the prison disciplinary hearing officer's finding, the court will not disturb the findings. *Id.* at 537.

Here, the charging officer testified that she intercepted a letter in an envelope with Petitioner's name on it containing STG contraband. She stated that she knew it was contraband

10

because the letter indicated that Petitioner was part of a gang. The letter identified gang operations within the prison and included threats concerning another inmate. The court finds that this is "some evidence" that Petitioner possessed contraband to support the disciplinary hearing officer's guilty finding. Petitioner's claim lacks merit.

### E. Cruel and Unusual Punishment (Ground Four)

Finally, Petitioner argues that his punishment is cruel and unusual in violation of the Eighth Amendment because TDCJ did not investigate his disciplinary case and it may affect his parole eligibility. (Doc. No. 3, at 7.) Respondent contends that Petitioner's guilt was substantiated by the record, and to the extent that Petitioner claims his punishment was cruel and unusual because it could affect his parole eligibility, this claim is meritless because there is no federal constitutional right to parole. (Doc. No. 17, at 18.)

As discussed above, Petitioner was not denied due process here and there was sufficient evidence to support the disciplinary hearing officer's guilty finding. Moreover, the mere potential of being denied release on parole does not constitute cruel and unusual punishment. *See Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007) ("[T]here is no right or constitutional expectancy of early release on parole in Texas"); *see also Sandin*, 515 U.S. at 487 (finding the potential that a disciplinary conviction may affect parole eligibility "too attenuated" to invoke due process). This claim is without merit.

### V. Conclusion

By failing to file a Step Two appeal within the allotted time frame, Petitioner has failed to exhaust his administrative remedies, and his federal habeas claims are procedurally barred. Considering the merits of Petitioner's claims, he is not entitled to habeas relief because (1) TDCJ's disciplinary action was reasonably related to a legitimate penological interest; (2) he was afforded

due process; and (3) there was sufficient evidence of his guilt, and (4) his punishment was not cruel and unusual.

## VI. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (finding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court emphasized that the COA inquiry "is not coextensive with a merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 580 U.S. at 115 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct

in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012)).

Here, Petitioner failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He has also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a COA.

## RECOMMENDATION

For the foregoing reasons, the court recommends that Petitioner's federal habeas petition be denied and dismissed with prejudice. It is further recommended that Petitioner be denied a certificate of appealability *sua sponte*.

Within fourteen days after service of the Magistrate Judge's Report, any party must serve and file specific written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 4th day of May, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE